```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SHAHIN BAROOR,

                              Plaintiff,
                                                                    OPINION & ORDER
    - against -                                                     06 CV 3965 (NG)

NEW YORK CITY DEPARTMENT OF
EDUCATION, HELEN ZENTNER, TED RADIN,
and GARRY GOLDENBACK, in their individual
and official capacities,

                              Defendants.
----------------------------------------------------------------x
```

**GERSHON, United States District Judge:**

Plaintiff Shahin Baroor, a former English as a Second Language ("ESL") teacher, brings this employment discrimination action pursuant to 42 U.S.C. §1983[1]; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin. Code § 8-107, alleging that defendants New York City Department of Education ("DOE"), Helen Zentner, Ted Radin, and Garry Goldenback discriminated against her based on her age and national origin and retaliated against her for complaining about defendants' discrimination. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that all but one of Ms. Baroor's claims are time-barred and that, as to her sole timely claim, no prima facie case is shown by plaintiff. For the reasons set forth below, defendants' summary judgment motion is granted.

---

[1] Plaintiff states in her brief that "to the extent Plaintiff's Complaint sets forth a claim for First Amendment retaliation, pursuant to § 1983, that claim is hereby withdrawn."

## Factual Background

Except as otherwise indicated, the following facts are undisputed for purposes of this motion. Ms. Baroor is a 60-year-old woman who was born in Iran. She moved to the United States from Iran in 1979 and was naturalized in 1989. Ms. Baroor obtained a bachelors degree from a university in Iran and a masters degree in education from St. Johns University. Baroor Deposition ("Baroor Dep.") at 12-13. In February 1982, defendant DOE hired Ms. Baroor as an ESL teacher and assigned her to Public School ("P.S.") 99. Baroor Dep. at 19. While working at P.S. 99, Ms. Baroor taught fifth and sixth grade students and received "good" evaluations of her job performance. Baroor Dep. at 20-21.

In January 1986, Ms. Baroor began working as an ESL teacher at P.S. 117, an elementary school in Community School District 28. Baroor Dep. at 24; Goldenback Dep. at 5. At P.S. 117, Ms. Baroor continued to receive good evaluations and, in 1992, was promoted to the position of ESL Coordinator. Baroor Dep. at 45. As ESL Coordinator, Ms. Baroor was required to do extra paperwork and administrative work, but also was provided with additional preparation and administrative time. Baroor Aff. ¶3.

In 1993, defendant Gary Goldenback, supervisor of bilingual and ESL programs in community School District 28 from 1989-2003, Goldenback Dep. at 5, forbade Ms. Baroor from administering ESL tests, post-tests, and pretests because she spoke English with an accent. Baroor Dep. at 40,46. Mr. Goldenback told Principal Nozara that ESL teachers with accents should not test the children and reiterated this policy to Ms. Baroor. Baroor Dep. at 47, 52. Subsequently, similarly situated American born teachers without accents performed testing. Baroor Dep. at 48, 51.

Ms. Baroor alleges that, although she filed a written complaint against Mr. Goldenback and complained about this policy to the principal of her school, her union representative, and Mr. Goldenback, the policy continued to be enforced. Baroor Dep. at 51, 61.

In November 1996, defendant Helen Zentner became the principal of P.S.117. Zentner Dep. at 5. On more than ten occasions beginning from the time that she first became principal, Ms. Zentner "screamed" at Ms. Baroor in front of colleagues and children because of Ms. Baroor's accent. Baroor Dep. at 31-33, 65. In addition, Ms. Zentner would ask plaintiff how she did things in her country and then laugh. Baroor Dep. at 66. Furthermore, although plaintiff continued to complain to Ms. Zentner and defendant Ted Radin about Mr. Goldenback's policy of not allowing ESL teachers with accents to test children, neither took any action, and Mr. Radin laughed at plaintiff's complaints. Baroor Dep. at 53.

In August 1999, Mr. Radin became Interim Acting Assistant Principal at P.S. 117 and, in April 2000, he was appointed to the position of Assistant Principal. Radin Aff. ¶5. Ms. Baroor alleges that Mr. Radin was hostile toward her "from the beginning" and would make fun of her and other ESL teachers because of their accents. Baroor Dep. at 34-35, 68. Mr. Radin removed students from Ms. Baroor's classroom and placed them with American-born teachers who did not have accents. Baroor Dep. at 37-39. In addition, Mr. Radin made many comments about Ms. Baroor's accent that made her feel "embarrassed all the time" and "humiliated" and caused her to lose "her self-esteem." Baroor Dep. at 37. Ms. Baroor complained to Mr. Radin about his discriminatory treatment of ESL teachers with accents, noting that "the largest mind in politics," Henry Kissinger, has a heavy accent. Baroor Dep. at 38. Mr. Radin laughed in response. Baroor Dep. at 38.

Mr. Radin also made age-based comments to Ms. Baroor, suggesting that she was old and that it was time for her to retire. Baroor Dep. at 69. Furthermore, in 2000, Mr. Radin gave plaintiff's ESL Coordinating job to David Golden, a younger, American-born teacher, telling plaintiff, "He has to do it. He is younger than you." Baroor Dep. 69, 71; Baroor Aff. ¶ 4. In addition to Mr. Radin's comments, Mr. Goldenback and Ms. Zentner also made age-based comments about Ms. Baroor in front of her colleagues. Baroor Dep. at 70, 147.

At the end of the 2000-2001 school year, Ms. Baroor complained to Ms. Zentner and Mr. Radin about the alleged discrimination. Baroor Dep. 80. Subsequently, although plaintiff had seniority, she was denied a summertime position in 2001 that would have provided her with additional income. Baroor Dep. at 55; Baroor Aff. ¶ 5. When Ms. Baroor asked the district why she did not receive the position in the summer of 2001, Ms. Zentner berated her for going to the district office, and again commented on her Iranian accent. Baroor Dep. at 55-56.

Ms. Baroor alleges that, on one occasion, the day after she made a complaint to her union and the district office, Ms. Zentner approached her and yelled at her for her complaints. Baroor Dep. at 54. Furthermore, after plaintiff complained about the alleged discrimination, Ms. Zentner's increased the frequency of her unannounced observations of Ms. Baroor's classroom. Baroor Dep. at 87. Similarly, Mr. Goldenback, although he did not often observe American-born teachers, often conducted unannounced observations of plaintiff. Baroor Dep. at 62.

For the 2001-2002 school year, Ms. Zentner assigned Ms. Baroor to classroom 361, located behind the gymnasium. Decl. of Andrea O'Connor, Ex. H; Baroor Dep. at 75. Plaintiff states that classroom 361 was in a "filthy" storage room that had a dirty sink, broken windows, and no shades. Baroor Dep. at 75. The classroom had no desk, no blackboard, no bulletin board,

4

and an insufficient number of chairs for students. Baroor Dep. at 77. Other teachers, who were not in plaintiff's protected class, or who had not complained of discrimination, were placed in classrooms with air-conditioning and better furniture, Baroor Dep. at 77, and Ms. Baroor asserts that Ms. Zentner assigned her this room because of her age, national origin, and her prior complaints. Baroor Dep. at 80-81.

Because the windows in the room were broken and the room was cold in the winter, Ms. Baroor and her students wore their jackets in the classroom. Baroor Dep. at 84. Furthermore, as a result of the cold and stress from the alleged discrimination, plaintiff developed the flu. Baroor Dep. at 84. Because of her illness, Ms. Baroor was hospitalized and began having seizures,[5] taking a medical leave from February 2001 to July 2001. Baroor Dep. at 96.

During the 2002-2003 school year, plaintiff was again assigned to room 361. Baroor Dep. at 98; Decl. of Andrea O'Connor, Ex. I. Ms. Zentner and Mr. Radin continued to observe Ms. Baroor's classroom more frequently than other teachers' classrooms, Baroor Dep. at 102, 104, and Ms. Zentner continued to scream at plaintiff. Baroor Dep. at 102. Ms. Baroor also was required to substitute teach more often than other ESL teachers who had not complained of discrimination, Baroor Dep. at 126, which hindered Ms. Baroor job performance because it required plaintiff to cancel her regularly scheduled classes. Baroor Aff. ¶ 6.

On October 10, 2002, while Ms. Baroor was talking to a secretary about a poor class assignment, Ms. Zentner came into the room and yelled at plaintiff. Baroor Dep. at 106-107. Later that day, Ms. Baroor injured herself in a classroom "[b]ecause [she] was under a lot of

---

[5] Although plaintiff asserts in her brief that she was hospitalized and began having seizures at this time, she does not cite to any portion of the record to support this claim.

stress and pressure" and because she was upset that Ms. Zentner had yelled at her. Baroor Dep. at 107. According to plaintiff, while covering a first grade class, she tripped over chairs that were stacked together as she walked between aisles in the classroom, hitting a desk with her ear and shoulder and causing pain to her entire body. Decl. of Andrea O'Connor, Ex. J; Baroor Dep. at 107.

In November 2003, plaintiff applied for a Leave of Absence Without Pay for the period from September 2, 2003 through June 30, 2004 for the purpose of "Restoration of Health." Decl. of Andrea O'Connor, Ex. K. The application was completed by Ms. Baroor's physician and approved by the DOE. Exhibit K. Plaintiff never worked at P.S. 117 or any other DOE facility after June 26, 2003. Baroor Dep. at 142-143.

On February 11, 2004, during her leave of absence, Ms. Baroor received a check in the mail and a letter from the Teachers' Retirement System of New York City ("TRS") notifying her that she was retired. Baroor Dep. at 133-134, 136; Decl. of Andrea O'Connor, Ex. O. Although defendants have produced a notarized TRS retirement application dated December 1, 2003 and signed by plaintiff, Decl. of Andrea O'Connor, Ex. N, Ms. Baroor claims that she never signed any retirement paperwork, never requested retirement, and that "any such signatures constitute a forgery." Baroor Aff.¶ 7. After receiving this February 11, 2004 check and letter, Ms. Baroor contacted the DOE[6] and indicated that she did not wish to retire and that she had not signed any retirement paperwork. Baroor Dep. at 138. Plaintiff never contacted P.S. 117 regarding her status. Baroor Dep. at 138.

---

[6] Plaintiff could not recall the name of the DOE employee with whom she spoke. Baroor Dep. at 138.

In November 2004, plaintiff was hospitalized as a result of vertigo and shoulder pain. Baroor Dep. at 141. Although she had continued to work for defendants until June of 2003, Ms. Baroor claims that she was bedridden for "nearly two years" prior to her November 2004 hospitalization, incapable of eating, showering, or engaging in any type of activity. Baroor Aff. ¶ 8. Plaintiff also claims that she was unable to walk or move for "a few months" from November 2004 to Spring 2005, and was being treated with physiotherapy. Baroor Dep. at 141-142. Although Ms. Baroor was initially treated with physiotherapy at her own home, she was able to attend sessions outside of her home after a few weeks. Baroor Dep. at 141-142. In response to deposition questions about her medical condition and the timing and length of the "various periods of incapacitation" alleged in her complaint, Ms. Baroor testified that her vertigo is "okay now" and that her incapacitation lasted until the spring of 2005. Baroor Dep. at 141-142.

On March 22, 2005, plaintiff submitted a signed and notarized Mandatory Service Purchase Election Form to the Teachers' Retirement System of New York City ("TRS"). Decl. of Andrea O'Connor, Ex. P.

On June 13, 2006, plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Decl. of Andrea O'Connor, Ex. L, and, on June 22, 2006, received a Right to Sue letter from the EEOC. Baroor Dep. at 154. Plaintiff filed the present action on August 16, 2006.

**Discussion**

**I. Standard of Review**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed.R.Civ.P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flannigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d. Cir. 2001). Nevertheless, "[t]he party opposing summary judgment may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible" or rest on "mere allegations or denials." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (internal citations omitted). Instead, the nonmoving party must produce specific, particularized facts indicating that a genuine factual issue exists. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

**II. Statute of Limitations**

**A. Plaintiff's Claims Pursuant to Title VII**

Plaintiff's complaint, drafted by counsel, includes no reference to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.* ("Title VII"). Instead, in her brief in opposition to defendants' motion for summary judgment, plaintiff for the first time asserts her Title VII claim, arguing that defendants and this court should have "inferred" the existence of a Title VII

claim because plaintiff's complaint refers to an EEOC complaint. The court is not persuaded by plaintiff's argument. The bare allegations of plaintiff's claims do not provide adequate notice of a Title VII claim.

In any event, the claims must be dismissed as time-barred. A Title VII claim is considered time-barred if a plaintiff "does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133-34 (2d Cir. 2003), *quoting* 42 U.S.C. § 2000e-5(e)(1). Although a hostile work environment claim is treated as a continuing violation and is considered timely so long as one act contributing to the claim occurred within the 300-day statutory period, discrete acts of discrimination such as termination, failure to promote, or denial of transfer that occur outside the limitations period are considered untimely even if other acts of discrimination occurred within the statutory period. *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111-114, 116 (2002). Nonetheless, the 300-day deadline for filing a formal EEOC complaint "is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).

In the present case, Ms. Baroor filed an EEOC charge on June 13, 2006. Because all of the defendants' alleged misconduct occurred prior to August 17, 2005, the EEOC charge is untimely as to each of Ms. Baroor's Title VII claims unless Ms. Baroor establishes that she is entitled to equitable tolling.

Circumstances that might warrant equitable tolling include, *inter alia*, a plaintiff's medical or mental impairment which prevented plaintiff from timely filing. *See, e.g.*, *Chapman v. ChoiceCare L.I. Term Disability Plan*, 288 F.3d 506, 508, 512-14 (2d Cir. 2002); *Brown v.*

*Parkchester South Condominiums*, 287 F.3d 58, 60-61 (2d Cir. 2002). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d 80-81 (quoting *Chapman*, 288 F.3d at 512). The plaintiff bears the burden of demonstrating that exceptional circumstances prevented her from timely filing a charge with the EEOC. *Zerilli-Edelglass*, 333 F.3d at 80; *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Ms. Baroor has failed to establish that she is entitled to equitable tolling. As a preliminary matter, Ms. Baroor's claim that she was bedridden, incapable of eating, showering, or engaging in any type of activity, for "nearly two years" prior to her November 2004 hospitalization is belied by the fact that she continued to work until June 2003. Furthermore, even accepting all of Ms. Baroor's allegations as true, equitable tolling is not warranted. Ms. Baroor took a leave of absence for health reasons during the 2000-2001 and 2003-2004 school years and experienced vertigo, shoulder pain, and difficulty balancing that necessitated physiotherapy and resulted in a November 2004 hospitalization. Even assuming Ms. Baroor's medical condition amounted to the rare and extraordinary circumstances necessary to toll the limitations period, Ms. Baroor does not claim that she was incapacitated *after* the spring of 2005.[2] Accordingly, even if the court tolled the limitations period during the time that Ms.

---

[2] In response to deposition questions about her medical condition and the timing and length of the "various periods of incapacitation" alleged in her complaint, Ms. Baroor testified that her vertigo is "okay now" and that her incapacitation lasted until the spring of 2005. Baroor Dep. at 141-142. In fact, on March 22, 2005 Ms. Baroor was able to fill out, sign, and submit an official notarized form to the Teachers' Retirement Service regarding payment of a membership service

Baroor claims to have been incapacitated, her EEOC charge still would be untimely because it was filed on June 13, 2006, more than 300 days after the end of the period of claimed incapacity. For the reasons discussed above, plaintiff's Title VII claims are dismissed as time-barred.

### B. Plaintiff's Claims Pursuant to 42 U.S.C. §1983

Claims brought under 42 U.S.C. § 1983 begin to accrue "when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994). The statute of limitations for §1983 claims brought in New York is three years, *Patterson v. County of Oneida*, 375 F. 3d 206, 225 (2d Cir. 2004), and state law governs the tolling of the statute of limitations for actions brought pursuant to § 1983. *McEachin v. City of New York*, 2007 WL 952065, *3 (E.D.N.Y. March 29, 2007). The Supreme Court has instructed that "[i]n § 1983 actions . . . a state statute of limitations and the coordinate tolling rules are more than a technical obstacle to be circumvented if possible." *Bd. of Regents of the Univ. of the State of New York et al., v. Tomanio*, 446 U.S. 478, 484-85 (1980). To the contrary, "[i]n most cases, they are binding rules of law" and courts are authorized "to disregard an otherwise applicable state rule of law only if the state law is inconsistent with the Constitution and laws of the United States." *Id.* (internal quotation marks omitted). Under New York law, the statute of limitations period may be extended "if a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues . . . ." N.Y. C.P.L.R § 208. Physical ailments, however, do not suffice to invoke the New York tolling provisions. *Eisenbach v. Metropolitan Transp. Authority*, 97 A.D.2d 808 (2d Dep't 1983) (finding that, because plaintiff

---

deficit.

was hospitalized as the result of physical illness rather than mental illness, plaintiff was not entitled to equitable tolling for the length of his hospitalization).

Plaintiff filed the present action on August 16, 2006. Except for one allegation—that plaintiff was wrongfully retired while on medical leave in February 2004—each alleged discrete act of discrimination accrued more than three years prior to the filing of this action. Ms. Baroor's untimely claims cannot be saved by the continuing violations theory because plaintiff's only timely claim is a discrete discriminatory act that is separate from plaintiff's alleged hostile work environment claim. *See Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004) (declining to characterize defendant's conduct—which involved initiating charges against plaintiffs and then prosecuting those charges to final disposition—as a single "continuing violation" because the act of prosecuting the charges was wholly separable from the act of initiating charges); *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. at 111-114, 116.

In addition, because Ms. Baroor has alleged incapacitation due to *physical* impairments and has not demonstrated that her disability was the result of infancy or insanity, she is not entitled to equitable tolling under New York law. *See* N.Y. C.P.L.R § 208; *Eisenbach*, 97 A.D.2d at 808. Even if statutory tolling were available under New York law for purely physical impairments, Ms. Baroor's alleged physical conditions—vertigo, shoulder pain, and difficulty balancing—would be insufficient to warrant equitable tolling. During the period of claimed incapacity, plaintiff (1) continued to work until June 2003: (2) filed an application for medical leave in November 2003; (3) filed a signed and notarized application for retirement in December 2003; (4) contacted the Department of Education some time after February 2004 to let them know that she did not want to be retired; (5) attended therapy sessions; (6) submitted, on March

22, 2005, a signed and notarized Mandatory Service Purchase Election Form to the Teachers' Retirement System of New York City; and (7) filed an EEOC charge on June 13, 2006.[3] Based on the foregoing, Ms. Baroor has failed to establish that her alleged health condition prevented her from pursuing her rights before the filing of this action in August 16, 2006. Accordingly, Ms. Baroor is not entitled to equitable tolling on this basis.

### III. Plaintiff's Alleged Wrongful Retirement

With regard to Ms. Baroor's sole timely claim, defendants argue that they are entitled to judgment as a matter of law. Plaintiff alleges that her retirement in February 2004 was both a discrete act of discrimination and an act in retaliation for her complaints of discrimination. Claims of employment discrimination brought pursuant to §1983 are analyzed using the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792. *Huntley v. Community School Board*, 543 F.2d 979, 983 n.6 (2d Cir. 1975) (holding that the *McDonnell Douglas* burden shifting analysis applies to §1983 actions for employment discrimination); *Abdu-Brisson v. Delta Air Lines, Inc*, 239 F.3d 456, 466 (2d Cir. 2001). Under this framework, a plaintiff must first present sufficient evidence to establish a prima facie case of discrimination by demonstrating that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *McDonnell Douglas,* 411 U.S.

---

[3] The filing of Ms. Baroor's EEOC charge on June 13, 2006 did not toll the statute of limitations for the claims that Ms. Baroor brings pursuant to 42 U.S.C. § 1983. Section 1983 claims are independent from Title VII claims, and there is no provision under New York law that provides for tolling during the period of time that a claimant seeks to pursue a different claim based on the same facts. *Cf. Cates v. Trans World Airlines, Inc.*, 561 F.2d 1064, 1072-73 (2d Cir. 1977) (noting that "the timely filing of a charge of employment discrimination with the EEOC under Title VII does not toll the running of the statute of limitations applicable to an action based on

at 802-804 (1973). Plaintiffs' burden of proof at this threshold step is minimal. *Howley v. Stratford,* 217 F.3d 141, 150 (2d Cir. 2000). Second, if the plaintiff successfully proves a prima facie case, a presumption of unlawful discrimination arises and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.; Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Third, if the defendant carries this burden, the plaintiff must then have an opportunity to demonstrate that the proffered reason is in fact a pretext for intentional discrimination. *McDonnell Douglas,* 411 U.S. at 802-04, 93 S.Ct. 1817; *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) ("a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason"). At all times, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

Defendants argue that plaintiff has not demonstrated a prima facie case of discrimination. Specifically, defendants maintain that Ms. Baroor was retired at her own request and, therefore, has not suffered any adverse employment action. In support of their argument, defendants have submitted a document entitled "Accident Disability Retirement Application" that bears Ms. Baroor's signature. The application is dated December 1, 2003, was received by the Teachers' Retirement System on December 2, 2003, and was notarized by a notary public. Ms. Baroor testified in her deposition that she had never informed the Board of Education that she wanted to

---

the same facts but instituted under 42 U.S.C. § 1981").

retire and stated in her affidavit that she "never signed any retirement paperwork, and never requested retirement [and that] [a]ny such signatures constitute a forgery." However, plaintiff offers no specific, particularized facts, or expert testimony, to support her claim that the retirement application form—which bears her signature and was notarized by a notary public—was a product of forgery. Nor does plaintiff offer any specific facts to support that the Teachers' Retirement System, an entity separate and distinct from the New York Department of Education, acted with discriminatory intent in approving her retirement application. Without factual support for her allegations, plaintiff's discriminatory retirement claim is mere speculation, insufficient to defeat defendant's motion for summary judgment. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment, therefore, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation") (internal citations and quotations omitted). Because plaintiff has not demonstrated a prima facie case of discrimination, defendants' motion for summary judgment is granted with respect to Ms. Baroor's claim of discriminatory retirement.[4]

**IV. Plaintiff's Claims Pursuant to NYSHRL and NYCHRL**

Ms. Baroor has two remaining state claims, discrimination under NYSHRL and

---

[4] Because plaintiff has not demonstrated a prima facie case of discrimination with respect to her sole timely claim under Section 1983, the court does not reach the issue of whether plaintiff can establish Section 1983 liability against the New York City DOE pursuant to *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 691 (1978). *See Oklahoma City v. Tuttle,* 471 U.S. 808, 824-25 (1985) ("[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker").

discrimination under NYCHRL. The New York Court of Appeals has instructed that the one-year statute of limitations prescribed in N.Y. Educ. Law § 3813(2-b) applies to NYSHRL employment discrimination claims brought against school districts. *See Amorosi v. South Colonie Independent Central School Dist., et al.*, 9 N.Y.3d 367, 371, 373 (2007).[5] As discussed earlier, Ms. Baroor filed her complaint on August 16, 2006, more than one year after the latest instance of alleged discrimination, and she is not entitled to equitable tolling. Accordingly, Ms. Baroor's NYSHRL claim against the New York Department of Education is time-barred.

Treating Ms. Baroor's state law discrimination claims against the individual defendants as governed by the three-year statute of limitations that normally governs employment discrimination actions under New York law, *see* N.Y. C.P.L.R. § 214(2); *Koerner v. State*, 62 N.Y.2d 442, 445-46 (1985), all but one of her claims, as discussed in Part II.B. of this opinion, would be untimely. And, with regard to that sole timely claim—that defendants wrongfully retired her in February 2004 while she was on medical leave—defendants are entitled to summary judgment because, for the reasons stated above, plaintiff cannot demonstrated a prima

---

[5] N.Y. Educ. Law § 3813 (2-b) provides that:

> Except as provided in subdivision two of this section and, notwithstanding any other provision of law providing a longer period of time in which to commence an action or special proceeding, no action or special proceeding shall be commenced against any entity specified in subdivision one of this section more than one year after the cause of action arose.

Subdivision (1) of N.Y. Educ. Law § 3813 provides, in pertinent part, that:

> No action or special proceeding, for any cause whatever, . . . shall be prosecuted or maintained against any school district [or] board of education . . . unless . . . a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim.

facie case of discrimination.  *See* Discussion *supra* Part III; *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 (2004) (applying the same elements as those outlined in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973) to determine whether plaintiff established a prima facie case of discrimination under New York law).

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.  The Clerk of Court is directed to enter judgment for defendants on all claims

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

**Dated:  Brooklyn, New York**
  **April 3, 2009**